James L. THOMAS, Jr., Jessilyn Thomas
and Curtis Simmons, Plaintiffs,

v.

Andrei S. GRIGORESCU, Kig Taxi, Inc., Division Private Car Service, Inc., "John Doe", the name being fictitious, said name intended to be the operator of the vehicle owned by defendant Division Private Car Service, Inc., and National Railroad Passenger Corp., Defendants.

No. 80 Civ. 2488–CSH.

United States District Court,
S.D. New York.

Feb. 22, 1984.

Juron & Minzner, New York City, for plaintiff.

Siff & Newman, New York City, for defendant National RR. Pass. Corp.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs, employees of defendant National Railroad Passenger Corporation ("Amtrak"), were injured in an automobile accident while on their way from the railyards to a hotel after work. They seek to recover damages against the railroad under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq,* which imposes liability on interstate carriers for certain of their employee's work-related injuries. Defendant Amtrak moves for summary judgment on the grounds that it owed plaintiffs no duty of care and was not liable for the negligence which caused their injuries.

At the time of the accident, plaintiffs were on-board Amtrak employees based in Florida. As part of their work they periodically travelled on Amtrak trains to New York City, where they would lay-over before returning to Florida. During the stop in New York, on-board employees were required to stay at a New York hotel, the Edison Hotel, some distance from the railyards. Employees were "on-call" while at the Edison, and Amtrak paid for their meals and lodging during the lay-over. At the time of the accident, plaintiffs were riding to the hotel in a cab owned by defendant KIG Taxi, whose negligence is alleged to have caused the accident.

According to information submitted by Amtrak, workers were not compensated for time spent at the hotel or travelling to and from the hotel, nor were they reimbursed for travel expenses. Amtrak exercised no control over the workers' choice of transportation to and from the hotel, and it was not required to arrange for or control such transportation under its contract with its workers. Because the choice of a taxi and driver was entirely plaintiffs', Amtrak claims that it is not responsible for their injuries. Plaintiffs contend, however, that Amtrak owed a "non-delegable duty to pro-vide safe transportation" for its employees travelling between the railyard and the hotel and is thus liable for any taxi negligence.

### I.

Railroads are liable "to any person suffering injury while he is employed by [an interstate] carrier in [interstate] commerce ... for ... injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...." 45 U.S.C. § 51. Ordinarily, this restricts plaintiffs to recovery for on-the-job accidents and excludes recovery for injuries suffered while travelling to and from work. *Parker v. Long Island Railroad Co.,* 425 F.2d 1013, 1015 (2d Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970); *Young v. New York, New Haven & Hartford Railroad Co.,* 74 F.2d 251, 252 (2d Cir.1934) (L. Hand, J.). However, if the trip to and from work is found to be "in the course of employment," the FELA applies. *Parker, supra,* 425 F.2d at 1015. In *Parker,* the Court of Appeals affirmed a jury finding of railroad liability to an employee injured during a free trip home on the railroad. It held that the jury reasonably could have found the ride within the course of the plaintiff's employment if it found that it was unreasonable to expect the employee to pay his own way home *and* that the employer had an interest in the ready availability of the plaintiff, a foreman, in emergencies. 425 F.2d at 1015. *Parker* has since been held inapplicable when the railroad has no interest in the plaintiff's all-hours availability. *Kress v. Long Island Rail Road,* 526 F.Supp. 856 (S.D.N.Y.1981). In *Kress,* Judge Duffy found that a free trip home and the use of a parking lot were supplied solely for the convenience of the employee and that as a result the plaintiff's use of them was not within the course of. her employment. *Id.* at 860. In the instant case, of course, the railroad provided no transportation. The action does not on its face involve the negligence of the railroad or its employees. Plaintiffs argue, how-

ever, that the trip to the hotel should be deemed an "operational activity" of the railroad, in which event the railroad would be liable for the negligence of its putative agent, KIG Taxi. *Sinkler v. Missouri Pacific Railroad Co.*, 356 U.S. 326, 331, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958). There are thus two steps to be traversed in reaching a finding of potential FELA liability: that the taxicab ride was taken in the course of the plaintiffs' employment and that the taxicab company was related to the railroad and its work in such a way as to cause the railroad to be liable for the negligence of the cab company and its driver.

## II.

■ There is plainly no mechanical test for determining whether activities are done "in the course of employment." The *Parker* case seems to indicate that so long as the plaintiff is engaged in an activity which benefitted the railroad in some manner—as opposed to taking advantage of a gratuitous benefit, as in *Kress, supra* —he or she is within the coverage of the FELA. An older case reinforces this impression. In *Mostyn v. Delaware, Lackawanna & Western Railroad Co.*, 160 F.2d 15 (2d Cir.1947), the plaintiff slept and ate in a bunk car which the railroad arranged to have available in the yards for "casual" workers. A small sum was deducted from his pay to cover the cost. One hot night, he was compelled by the "verminous" condition of the bunk car to drag his blankets outside and sleep by a set of normally unused rails. During the night, a refrigerator car being backed onto the tracks injured him. In affirming a jury finding that the plaintiff's sleeping was done in the course of his employment, Judge Learned Hand held that "activities which, though literally not part of the work, are necessary to its performance" fall within the statute but those undertaken "for a private purpose" do not. 160 F.2d at 17. "[W]hen a railroad provides shelter or food or both for its employees, and they are using the accommodations so provided to prepare themselves for their work, or to rest and recu-

perate, they must be regarded as in its 'employ.'" 160 F.2d at 17–18. Just as the railroad in *Parker* gained from the around-the-clock availability of its employee, so Mostyn's employer gained by providing its employees food and shelter which allowed them to rest, recuperate, and prepare for work.

A jury could reasonably find that Amtrak gained from providing lodging for the plaintiffs while they were "laying-over" in New York. Plaintiff Simmons asserts that the employees were "on-call" while at the hotel, and Amtrak presumably could have benefitted from the plaintiffs' easy accessibility while there, since their presence assured that they could be located for work. Like the railroad in *Mostyn*, Amtrak could be found to have benefitted simply by giving its employees a place to rest and prepare for the return trip. A jury could find thus the hotel stay within the course of plaintiffs' employment. Because the stay at the hotel of necessity required transportation to and from it, I cannot as a matter of law find that during the trip plaintiffs were outside the course of their employment. *Cf. Magnolia Towing Co. v. Pace*, 378 F.2d 12 (5th Cir.1967) (per curiam). As *Mostyn* and *Parker* teach, it is ultimately a question of fact for the jury.

## III.

■ However, such a possible finding does not end our inquiry. Section 51 imposes liability only for injury resulting from "negligence" of "any of the officers, agents, or employees" of a carrier. This provision distinguishes the FELA from normal workers' compensation statutes, which grant recovery for injuries suffered in the course of the workers' employment regardless of negligence. Unlike a compensation statute, a work-related injury is not sufficient to trigger recovery. The FELA conditions the railroad's liability to its injured employee upon a showing of negligence attributable to the railroad. Congressional wisdom in incorporating these requirements in what is otherwise a workers' compensation statute has been sharply ques-

tioned, *see, e.g., Ferguson v. Moore-McCormick Lines,* 352 U.S. 521, 538–539, 77 S.Ct. 457, 466–467, 1 L.Ed.2d 511 (1957) (Frankfurter, J., dissenting), but the statute retains them.

As compared to normal workers' compensation statutes, the FELA is not without its advantages for the worker: those who can make the required showing are fully compensated for the harm caused by their injuries. In contrast, workers covered by ordinary workers' compensation statutes frequently receive statutorily fixed compensation inadequate to fully cover the cost of their injuries. In addition, the Supreme Court, in a series of decisions in the late 1950s, eased the showing required to satisfy these two requirements and thereby substantially broadened the type of injuries covered by the Act. *See, Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Ferguson v. Moore-McCormack Lines, supra; Kernan v. American Dredging Co.,* 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958); *Sinkler v. Missouri Pacific Railroad Co., supra.* Nevertheless, the clear implication of these decisions and Congressional inaction in the face of criticism is that the requirement of employer negligence remains, if in diluted form. *See, e.g., Kernan v. American Dredging Co., supra,* 355 U.S. at 451–452, 78 S.Ct. at 406–407 (Harlan, J., dissenting); *Sinkler v. Missouri Pacific Railroad Co., supra,* 356 U.S. at 332–334, 78 S.Ct. at 763–764 (Harlan, J., dissenting). *Cf. Ward v. Atlantic Coast Line Railroad Co.,* 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960) (per curiam); *Kelley v. Southern Pacific Co.,* 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974).

In *Sinkler v. Missouri Pacific Railroad Co., supra,* one of the liberalizing decisions mentioned above, the Supreme Court expanded the definition of "agent" in § 51 to encompass all those who are "performing, *under contract,* operational activities of [the] employer," 356 U.S. at 331, 78 S.Ct. at 763 (emphasis added), notwithstanding the

fact that such individuals or organizations would be considered independent contractors at common law. 356 U.S. at 333, 78 S.Ct. at 763 (Harlan, J., dissenting).

*Sinkler* has been given a generous interpretation by the courts. Thus it is that a Y.M.C.A. performing a function nearly identical to that of the Edison Hotel in the instant action—providing, in return for money supplied by the railroad, room and board for employees working away from home—has been found to be performing an operational activity of the railroad so as to bring injuries caused by the Y.M.C.A.'s negligence within the FELA. *Carney v. Pittsburgh & Lake Erie Railroad Co.,* 316 F.2d 277, 282 (3d Cir.), *cert. denied,* 375 U.S. 814, 84 S.Ct. 45, 11 L.Ed.2d 49 (1963). Other cases have labelled as "operational activities" a taxi ride between a work site and the railyard, *Leek v. Baltimore & Ohio Railroad Co.,* 200 F.Supp. 368 (N.D. W.Va.1962); *Penn Central Corp. v. Checker Cab Co.,* 488 F.Supp. 1225, 1228 (E.D. Mich.1980) (both cited by plaintiffs), the unloading of freight, *Smith v. Norfolk & Western Railway Co.,* 407 F.2d 501 (4th Cir.), *cert. denied,* 395 U.S. 979, 89 S.Ct. 2134, 23 L.Ed.2d 767 (1969), a taxicab ride from a ship docked in a foreign country to the local United States Consul in compliance with a statute, *Hopson v. Texaco, Inc.,* 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966) (per curiam),[1] operation of a cafeteria for employees' use, *Moore v. Chesapeake & Ohio Railway Co.,* 493 F.Supp. 1252, 1259 (S.D.W.Va.1980), and the giving of medical assistance to a seaman at sea, *Fitzgerald v. A.T. Burbank & Co.,* 451 F.2d 670, 680 (2d Cir.1971). In each of these cases, as in *Sinkler,* the negligent party was operating under a contract with the plaintiff's employer. This is a critical feature of liability, for it is the contract which permits a finding that the negligent party was the "agent" of the employer. In the absence of such a contract, there is no basis for liability under the FELA. *See, e.g., Epling v. M.T.*

---

**1.** The Jones Act, which provides a right of suit to seamen injured in work-related accidents, incorporates the liability of provisions of 45 U.S.C. § 51.

*Epling Co.,* 435 F.2d 732, 736 (6th Cir. 1970), *cert. denied,* 401 U.S. 963, 91 S.Ct. 990, 28 L.Ed.2d 247 (1971); *Broussard v. Marine Transport Lines, Inc.,* 369 F.Supp. 103, 105 (E.D.Tx.1974). No such contract existed here.

■ Plaintiff Simmons states in his affidavit that he thinks the railroad might have reimbursed plaintiffs for their taxiride and requests more discovery. Even if such an allegation were sufficient to put the question of reimbursement at issue in the face of Amtrak's denials, I do not find the possibility of reimbursement to be material. A major reason that the existence of a specific contract fairly serves to subject the carrier to liability for the negligence of one otherwise outside its control is that in contracting with a particular third party the carrier forces its employees to work near or be served by the third party. Because by virtue of its contract the employer requires its employees to suffer the tender ministrations of the third party, it can fairly be asked to share the burden of liability if its contractually created agent is careless. Plaintiffs, in contrast, chose KIG Taxi and their driver. Because the railroad played no role in that selection, fairness does not favor imposing liability on the railroad. Nor does the express language of *Sinkler, supra,* 356 U.S. at 331, 78 S.Ct. at 762.[2]

■ Plaintiffs argue that Amtrak had a nondelegable duty to provide them safe transit to the hotel. Because the plaintiffs were required by the railroad to travel to the hotel, there is some equitable force to this argument. It is an argument, however, that should be addressed to Congress. The statute as it stands requires negligence of the carrier or its agents. I cannot sidestep the statutory requirement by creating a nondelegable duty of care for all activities conducted in the course of employment. To do so would, of course, make the FELA into a workers' compensation statute by judicial fiat. As the statute stands, not all injury in the course of employment is compensable. *See, Broussard v. Marine Transport Lines, Inc., supra.* The only nondelegable duty currently created by FELA is for the employer to provide a safe workplace, *Verrett v. McDonough Marine Service,* 705 F.2d 1437 (5th Cir.1983), which extends only to those areas over which the defendant or its agents exercise control. 705 F.2d at 1441. This accident occurred outside the employer's premises.[3]

Since plaintiffs were not the victims of any negligence for which defendant Amtrak can be held liable, the motion for summary judgment must be granted. All claims against National Railroad Passenger Corporation are dismissed.

It is SO ORDERED.

---

**2.** The Court's language in *Hopson v. Texaco, supra,* which applied the *Sinkler* rationale to claims for injury and death suffered by seamen being transported in a taxi, underscores the distinction:

"And it was respondent [employer]—not the seamen—which selected, as it had done many times before, the taxi service. Respondent—the law says—should bear the responsibility for the negligence of the driver which it chose." 383 U.S. at 264, 86 S.Ct. at 766.

**3.** Since Amtrak was not liable for plaintiffs' initial injuries, it was under no duty to provide plaintiffs safe transport from New York to Florida, nor do plaintiffs cite any authority which suggests that it was.