**Leighton EMPEY, Plaintiff,**

v.

**GRAND TRUNK WESTERN RAILROAD CO.,**
**Defendant.**

**Civ. A. No. 84–2431 PH.**

United States District Court,
E.D. Michigan, S.D.

March 19, 1987.

James A. Brescoll, Dennis P. Brescoll, Brescoll & Associates, Mt. Clemens, Mich., for plaintiff.

John L. Foster, Richard Dietz, Foster, Meadows & Ballard, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Plaintiff brought this action under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, seeking recovery for damages suffered as a result of a severe back injury sustained from two separate incidents while working for defendant. On September 5, 1986, the jury returned a verdict in favor of the plaintiff in the amount of $700,000.00, finding the plaintiff zero percent negligent. This matter is now before the Court on defendant's motion for judgment n.o.v. and, in the alternative, for a new trial.

### I.

Plaintiff claimed that his back was first injured on September 8, 1983, at the Downtown Motor Lodge in Port Huron while on a layover following a train movement from Flat Rock to Port Huron. While exiting the shower, plaintiff slipped in a puddle of water which had accumulated on the floor outside the shower stall, causing him to fall on his back. Plaintiff offered evidence showing that the water was able to escape through the shower stall because of a faulty latch which prevented the door from being tightly shut.

The second incident occurred on September 15, 1983, while plaintiff was performing switching operations at what was described during trial as the Richmond Co-Op. Plaintiff claims he fell into a hole covered from view by high, untrimmed weeds. Plaintiff also alleged in Counts II and IV of his complaint that defendant negligently assigned him to duties beyond his physical capabilities after his injuries suffered on September 8 and 15, 1983.

At the conclusion of all the proofs, both parties moved for a directed verdict on several issues.[1] Both parties sought a directed verdict on the issue of whether plaintiff was acting within the scope of his employment while injured at the Downtown Motor Lodge and whether the Downtown Motor Lodge and the Richmond Co-Op were agents of the defendant engaged in operational activities of defendant. Defendant also requested a directed verdict on plaintiff's negligence claims for the injuries allegedly incurred at the Downtown Motor Lodge and the Richmond Co-Op, and as a result of defendant's reassignment of plaintiff.

The Court held that as a matter of law plaintiff was acting within the scope of his employment during the first incident, thus denying defendant's motion and granting plaintiff's motion. The Court denied both parties' second motion finding that the question of whether either the Downtown Motor Lodge or Richmond Co-Op were agents engaged in operational activities of defendant as defined in *Sinkler v. Mo. Pac. R.R.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958), was irrelevant in light of the broader nondelegable duty standard embraced by the Sixth Circuit in *Payne v. Balt. & Ohio R.R. Co.*, 309 F.2d 546 (6th Cir.1962), *cert. denied*, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963). The Court denied defendant's request for a directed verdict on the September 8 and 15, and negligent reassignment claims.

Defendant presents three arguments in support of its motion for judgment n.o.v. and five in support of its motion for a new

---

1. The parties agreed at the close of plaintiff's case-in-chief that defendant's motion would be reserved until the close of all the evidence since it was anticipated that each party intended to move for a directed verdict on the same issues.

trial.[2] Because a motion for judgment n.o. v. and for a new trial involve different standards, the Court will treat each motion separately.

## II.

The standard used for determining whether a directed verdict is proper is also applicable to a motion for judgment n.o.v. *Grimm v. Leinart,* 705 F.2d 179, 181 (6th Cir.1983), *cert. denied,* 465 U.S. 1066, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984). A directed verdict is proper only when there is "a complete absence of pleading or proof on an issue or issues material to the cause of action or where there are no controverted issues of fact upon which reasonable men could differ." *Rockwell Int'l Corp. v. Regional Emer. Med. Services,* 688 F.2d 29 (6th Cir.1982); *Hersch v. United States,* 719 F.2d 873, 877 (6th Cir.1983); *Grimm v. Leinart,* 705 F.2d at 181, 181 n. 2. Additionally, the Supreme Court has indicated that in a cause of action arising under FELA, a jury's interpretation of the facts deserves even greater deference. "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946); *Clark v. Ky. & Ind. R.R.,* 728 F.2d 307, 310 (6th Cir.1984). *See also Green v. River Terminal Ry. Co.,*

763 F.2d 805, 806–807 (6th Cir.1985) (the court's power to direct a verdict is restricted in light of ... [the] remedial purposes [of FELA] and the legislative desire to preserve the plaintiff's right to a jury trial).

In deciding a motion for a directed verdict or a judgment n.o.v., the Court:

> may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor.

*Carter v. City of Chattanooga,* 803 F.2d 217, 225 (6th Cir.1986) (quoting *Morelock v. NCR Corp.,* 586 F.2d 1096, 1104 (6th Cir. 1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979)); *Gomez v. Great Lakes Steel Div.,* 803 F.2d 250, 254 (6th Cir.1986).

## A.

■ Defendant first argues that the Court erred in holding as a matter of law that the plaintiff was within the scope of employment when injured at the Downtown Motor Lodge.[3] Defendant contends that plaintiff was not in the scope of employment because plaintiff was unavailable for duty at the Downtown Motor Lodge, he

---

**2.** It is not readily apparent from defendant's motion which issues are included in support of its motion for judgment n.o.v. and which issues are included in support of the motion for a new trial. Nevertheless, upon reading the Statement of the Issues Presented which prefaces defendant's brief, it appears that the first three issues, which were raised by defendant in its motion for a directed verdict, are the only ones alleged in support of the request for judgment n.o.v.

**3.** Literally interpreted, defendant's statement of the issue and brief challenges the Court's ruling on plaintiff's motion for a directed verdict on this issue, and not the denial of its own motion. Defendant's statement of the issue reads: "Did the Court commit reversible error when it ruled as a matter of law that the plaintiff was within the scope of his employment at the time of his alleged injury while showering at the Downtown Motor Lodge on September 8, 1983."

The proper procedure under the provisions of F.R.Civ.P. 50 is to challenge the denial of its own motion for a directed verdict. Rule 50 is

intended to provide a party a second chance to move the Court for a verdict which was requested during trial but was denied. *See generally* 9 C. Wright and A. Miller: *Federal Practice and Procedure,* § 2532 (West 1971). It is not meant to serve as a device to enable a party to appeal to the trial court the Court's decision to grant a directed verdict requested by the opposite party. The difference could be significant because upon review it is much easier for a party to show that sufficient evidence was presented at trial and that the opposing party's motion should have been denied than it is to prove that the party's own motion on the same issue should have been granted.

Accordingly, in order to bring a motion under Rule 50, defendant must contend that the Court erred in failing to find as a matter of law that plaintiff was *not* within the scope of employment when he slipped and fell at the Downtown Motor Lodge. Nevertheless, given the facts of this case, the difference is not outcome-determinative and the Court will consider defendant's first objection under both characterizations.

was not required to stay at the Downtown Motor Lodge and defendant did not have control over the operation of the motel.

It is settled that an employee is protected under the FELA only if injured within the scope of employment. *See, e.g., Moore v. Chesapeake & Ohio Ry. Co.,* 649 F.2d 1004, 1008 (4th Cir.1981). No exact formula has been devised for determining when a particular accident is sufficiently related to the employee's work such that it is considered to have occurred within the scope of his employment. Each case must be decided upon its own facts. *Cudahy Packing Co. v. Parramore,* 263 U.S. 418, 424, 44 S.Ct. 153, 154, 68 L.Ed. 366 (1923).

Relying on *Carney v. Pittsburgh & Lake Erie R.R. Co.,* 316 F.2d 277 (3rd Cir.1963), *cert. denied,* 375 U.S. 814, 84 S.Ct. 45, 11 L.Ed.2d 49 (1964), *Mostyn v. Delaware L. & W. R.R. Co.,* 160 F.2d 15 (2d Cir.1947), and *Baker v. Baltimore and Ohio R.R. Co.,* 502 F.2d 638 (6th Cir.1974), the Court held that plaintiff was within the scope of employment while at the Downtown Motor Lodge since it was uncontroverted at trial that defendant provided plaintiff lodging so that plaintiff could rest and recuperate to prepare himself for his next assignment. In *Mostyn* a track worker was housed and fed in a bunk car by a third party that was under contract with the railroad. He was struck by a passing train while sleeping outside the bunk and near the tracks because of the verminous condition of his bunk. Plaintiff was not forced to stay on the work-site and apparently was not on call. After wrestling with the "dilemma" presented in attempting to determine which activities, although not literally part of the work, are necessary to its performance, the Court stated:

> It seems to us that when a railroad provides shelter or food or both for its employees, and they are using the accommodations so provided to prepare themselves for their work, as to rest and recuperate, they must be regarded as in its 'employ'.

*Mostyn,* 160 F.2d at 17–18.

In *Carney* the plaintiff was a resident of Pittsburgh and was assigned to work on a project at the railroad's yard near Youngstown, Ohio. The plaintiff was injured when he fell from a bed at a Y.M.C.A. in a town near Youngstown where he was staying. Although the plaintiff was not compelled to stay at the Y.M.C.A., the railroad would not have paid or reimbursed the plaintiff for his living expenses. At the time of the injury the plaintiff was apparently not on duty or on call.

The court relied on *Mostyn* in concluding that plaintiff was within the scope of employment when injured:

> [W]e have the essential common elements of *Mostyn.* . . . in that defendant provided plaintiff with shelter and food, which by custom and the economic realities of the situation he and his work group were encouraged to use. The case clearly comes within the framework of *Mostyn.* . . .

*Carney,* 316 F.2d at 279. The court also suggested that the facts were even stronger than those in *Mostyn* since the plaintiff in *Carney* was economically compelled to stay at the "Y" because the railroad would not have reimbursed the plaintiff had he not stayed at the "Y".

The general principle which can be gleaned from *Mostyn* and *Carney* is that an employee is within the scope of employment when availing himself of lodging which the railroad has provided and encouraged him to use. The rationale behind this rule apparently is that the lodging is provided as a means of preparing the employee for work, and is, therefore, incidental to the employee's work.

At trial, this Court felt compelled to follow the reasoning of *Mostyn* and *Carney* in light of the Sixth Circuit's admonition in *Baker v. Baltimore & Ohio R.R. Co.,* 502 F.2d 638 (6th Cir.1974), that, "FELA's liberal purpose must be kept in mind when confronting arguments that would restrict an employer's liability under the Act." *Id.* at 641. At issue in *Baker* was whether an employee who had injured the plaintiff was within the scope of employment at the time of the injury. Although *Baker* dealt with determining the breadth of the scope of employment of an employee who injured

another employee as opposed to the employee actually injured, the difference does not alter the importance of the broad policy advanced by the Court to the facts of this case.[4] In contending that the "course of employment" test should be broadened, the court, in part, relied on *Mostyn* for the proposition that "[t]he scope of employment includes not only actual service, but also those things necessarily incident thereto." *Id.* at 642. Applying the *Mostyn—Carney* rest and recuperation rule to the evidence presented at trial, the Court granted plaintiff's motion holding that no reasonable juror could determine that the accomodations made available by defendant at the Downtown Motor Lodge were not provided so that defendant's employees could "prepare themselves for their work, or ... rest and recuperate." By logical implication the Court then denied defendant's motion.

Upon further review, the Court adopts its previous holding. The rest and recuperation standard is not only based on the sound reasoning of *Mostyn* and *Carney* and required by *Baker*, but it is also in accord with the broader policy concerns underlying the FELA articulated by the Supreme Court in *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). The Court held that the FELA abrogated common law notions of liability based on respondent superior and that the proper standard under the FELA was whether the employee's injury is caused by the fault of others performing, under contract, operational activities of the railroad. The Court was led to this conclusion after elaborating on the reasons why, under the FELA, an employee is able to recover from a railroad when the railroad is not to blame for the worker's injuries:

> [A] railroad worker may recover from his employer for an injury caused in whole or in part by a fellow worker, not because the employer is himself to blame, but because justice demands that one who give his labor to the furtherance of the enterprise should be assured that all combining exertions with him in common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered.

*Id.* at 330, 78 S.Ct. at 762.

It would violate the notions of fair play for the railroad to encourage its employees to lodge at a particular establishment and then escape liability for injuries suffered by its workers as a result of the poor quality of the facilities it encouraged them to use.[5]

Applying the *Mostyn—Carney* standard to the present case, the Court finds that it correctly concluded that no reasonable juror could conclude, based on the evidence presented at trial, that the plaintiff was not encouraged to use the Downtown Motor Lodge to prepare himself for his next assignment. It logically follows that the jury could have concluded that the plaintiff was encouraged to use the Downtown Motor Lodge and defendant's motion was, therefore, properly denied.

Defendant first attempts to distinguish the present case from *Mostyn* and *Carney* on the ground that the plaintiff in this case, unlike the employee in either *Mostyn* and *Carney*, was subject to the mandatory rest period pursuant to section 2 of the Hours of Service Act, 45 U.S.C. § 61 *et seq.* and was, therefore, unavailable for duty at the time he was injured. Defendant concludes that it would be illogical to rule as a matter of law that plaintiff was in the scope of

---

4. Although the Court was considering the scope of employment of an employee who had injured another employee, the "scope of employment" of an injuring employee should be no different than the scope of employment for an injured employee. That this is true is evident from the Court's opinion itself which adopts the language and cases dealing with the scope of employment of the latter, in determining the scope of employment of the former.

5. The railroad's liability must, of course, be proved. But assuming that it is liable for the injury, either through its own independent negligence or by virtue of the imputation of the negligence of the place of lodging, the fact that the injured worker was not performing actual work can not insulate the railroad from liability when the railroad recommends and encourages an employee to lodge at a particular place.

employment when he was injured since at that time he was precluded from working by federal law.

■ Even assuming that under section 2 of the Hours of Service Act plaintiff was at no time subject to being on call while lodging at the Downtown Motor Lodge, the fact that defendant encouraged the plaintiff to use the Downtown Motor Lodge to rest and recuperate for his next assignment was in itself of sufficient benefit to the defendant to require a finding that plaintiff was injured within the scope of employment. Contrary to defendant's contention, neither the *Mostyn* or *Carney* court based its decision on the fact that the employee was on call. In short, although being on call is sufficient to bring the employee within the scope of employment while on layover, it is not essential where the employer provides its employees lodging it encourages them to use. *Parker v. Long Is. R.R. Co.,* 425 F.2d 1013, 1015 (2d Cir.1970), *cert. denied,* 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970), and *Kress v. Long Is. R.R. Co.,* 526 F.Supp. 856, 860 (S.D.N.Y.1981) do not change this conclusion.

In *Parker,* the Second Circuit held that an employee injured while preparing to return home on one of the railroad's passenger trains was within the scope of employment since he possessed a rail pass and was on call for emergencies. He was not compelled to ride the train. *Parker* was found inapplicable when the railroad has no interest in keeping the employee on call. *Kress,* 526 F.Supp. at 860. The holding in *Kress* is indicative of the courts' general reluctance to find an employee possessing a free rail pass to be in the scope of employment while injured enroute to or from work when using the employer's pass aboard a passenger train of the railroad. *See, e.g., Metropolitan Coal Co. v. Johnson,* 265 F.2d 173 (1st Cir.1959). The general theory in the "commuter" cases is that the free pass is only for the benefit of the employee. In a lodging case such as this one, however, the benefit is not free transportation to or from work but rather the provision of overnight accomodations. The latter clearly is more aligned with perform-

ance of the employee's job then is the former.

■ Defendant next contends that the plaintiff was not, as a matter of law, injured within the scope of employment because the evidence offered by both parties at trial conclusively showed that defendant did not require plaintiff to stay at the Downtown Motor Lodge. Although employer compulsion may be a sufficient basis for finding an employee's injury to be sufficiently related to his work to have occurred within the scope of employment, it is not a necessary condition to support such a finding.

In *Mostyn* the plaintiff was not compelled to sleep on the railroad's premises. Indeed, the court held that the employee's resting to prepare himself for the next day's work was sufficient reason to support its findings. In *Carney* the Third Circuit found that although the facts were stronger than those in *Mostyn* since the employee was economically compelled to stay at the "Y", the rest and recuperation in preparation for the following day's work was enough to bring the case within the framework of *Mostyn* and was a necessary incident to the employee's employment. In *Thomas v. Grigorescu,* 582 F.Supp. 514 (S.D.N.Y.1984), the railroad encouraged its Florida-based employees to lodge at the Edison Hotel in New York while on layover. Relying on *Mostyn,* the court held, in part, that the railroad benefited simply by giving its employees a place to rest and recuperate and that the employee was, therefore, within his scope of employment while at the hotel.

In support of its argument defendant relies on *Sassaman v. Pa. R.R. Co.,* 144 F.2d 950 (3rd Cir.1944), *Metropolitan Coal Co. v. Johnson,* 265 F.2d 173 (1st Cir.1959), and *Getty v. Boston and Me. Corp.,* 505 F.2d 1226 (1st Cir.1974), each of which dealt with an employee injured while traveling to or from work by means of one of its employer's passenger trains. In *Sassaman,* the plaintiff was injured while boarding one of the defendant's passenger trains on his return home from work. The court held that the absence of employer compul-

sion as to the employee's mode of travel which would serve to continue the employee relationship away from the place of employment precluded a finding that the plaintiff was within the scope of employment when injured:

> In short, the condition which makes possible a claim for injuries suffered as in the course of employment but which are actually received on premises away from the employee's place of employment is the fact that the employee must, of necessity, traverse such other premises in order to reach or depart from the place of the discharge of his duties. In such circumstances, he is upon the adjacent or other premises, as a requisite of his employment, either with the knowledge and consent or the approval of his employer, at the least, legally implied from the knowable situation.

In *Metropolitan Coal*, the First Circuit adopted the Third Circuit's rationale in *Sassaman* in holding that an employee possessing a free pass and injured while traveling to work aboard an express train of the defendant was not within the scope of employment. The employee possessed a free pass and was injured when a hook attached to a cable run over by the train flew up and shattered the car window beside the plaintiff. After adopting the holding in *Sassaman*, the court added that "[A]lthough the plaintiff was on the carrier's premises when he was injured, he was not on a part of its premises which it was necessary from him to use to reach his work. He was not required to go to work on the defendant's passenger train." *Id.* at 178. The court also stressed that while riding on the train the plaintiff was not exposed to any greater hazard than any of the other passengers. *Id.*

And most recently in *Getty*, the First Circuit refined its holding in *Metropolitan Coal* and held that employer compulsion to ride a train of the defendant railroad must emanate from the employer and not from other circumstances beyond the control of the employer. In *Getty*, the plaintiff was injured when he slipped and fell while approaching the platform of one of defendant's stations. The plaintiff contended that the heavy snow which had fallen the previous night rendered other forms of transportation inaccessible and that he was thus compelled to take the train to work. The court rejected this reasoning:

> The sort of necessity referred to in *Metropolitan Coal* must, we think, stem more directly from a specific requirement of his job or a specific understanding as to his mode of travel.... [A]bsent circumstances indicating a special relationship with one's employer, subjective choices of where to live and how to travel are insufficiently related to employment to determine the coverage of the federal statute.

*Getty*, 505 F.2d at 1227–28.

The "employer compulsion" rationale applied in the commuter cases should not be blindly applied to situations in which a railroad supplies its employees with lodging because the facts in each situation are totally different. This is especially true because the "employer compulsion" concept developed in *Sassaman*, *Metropolitan Coal* and *Getty* was itself derived by analogy to earlier cases in which the question was whether an employee traveling to work was within the scope of employment when injured on premises adjacent to his place of work.

In *Cudahy Packing Co. v. Parramore*, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923), for example, a railroad worker traveling to work was hit by one of the defendant's trains while he was crossing tracks located on a parcel of property attached to the defendant's work place. The question presented in *Cudahy* was whether the accident was sufficiently related to the employer's business to fall within the ambit of the Utah Workers' Compensation Statute. The Supreme court had previously held in *Erie R.R. Co. v. Winfield*, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057 (1917), that an employee leaving the carrier's yard at the end of a day was discharging a duty of his employment. In *Cudahy*, the Court extended the scope of employment to include an employee's departure from work while the employee is traversing property adjacent to the work place which he is compelled by the

employer to traverse in order to get to and from work and which exposes the employee to a greater risk than experienced by the general public. By compelling the employee to cross the tracks daily, the Court held that traveling the adjacent parcel was a necessary incident of his employment. *See also Bountiful Brick Co. v. Giles*, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928).

The *Sassaman* court simply excised the compulsion component from the test in *Cudahy* and cases like it and applied it to the "commuter" context. Clearly application of the "employer compulsion" component from *Cudahy*—type cases to commuter cases is highly questionable. To construe the railroad tracks traversed by the trains traveled by the railroad's commuting employees as adjacent or nonadjacent property which the employee may or may not be compelled to traverse to get to work is to engage in a fiction. The analogy is further exaggerated when applied to situations like that present in this case in which the railroad provides lodging at some place distant from the railroad yard. The employee's compulsion to lodge at a particular establishment can not mystically extend the boundaries of the workplace to include the place of lodging. Although the Court does not deny that employer compulsion to stay at a designated place while on layover would satisfy the scope of employment standard, in light of *Mostyn, Carney, Baker* and *Sinkler* it is not required for such a finding.

Defendant finally contends that plaintiff was not within the scope of employment while at the Downtown Motor Lodge because the railroad had no control over the premises. Defendant relies on *Moore v. Chesapeake & Ohio Ry. Co.*, 649 F.2d 1004 (4th Cir.1981), in which the court, despite finding that the plaintiff was within the scope of his employment while injured in the railroad's lunchroom, cautioned that the result reached by the court might have been different had the railroad not maintained control over the lunchroom. The lunchroom was operated by an outside ca-

tering service which paid rent for the use of the facilities, but retained all profits and paid all costs incident to operation of the cafeteria. The court held that unlike *Metropolitan Coal* and *Getty*, control over the environment of the employee in his role as an employee was present. The court emphasized in a footnote that the situation might have been different had the railroad leased the cafeteria. "A bona fide lease which conferred control ... [on the caterer] and opened the cafeteria to the general public could well have ended the status of the cafeteria as part of the workplace provided by ... [the railroad for the plaintiff's] activity as an employee." *Id.* at 1011.

■ Notwithstanding the court's apparent holding in *Moore* to the contrary, an employer need not have control over a premises that he encourages the employee to use in order for an employee's use of the premises to be incident to his employment. In *Carney* the employer had no control over the operation of the Y.M.C.A. where its employees were housed. Similarly, in *Thomas*, lack of control was of no concern to the court. As is the case here, the railroad had no control over the hotel. Control was not a factor in *Mostyn*.

In any event, it is evident from the language used in *Moore* that the court was concerned about the employer's control of the premises only to the extent that it affected the benefit retained by the railroad in encouraging its employees to eat lunch on the railroad's premises. Lack of control of the cafeteria would have indicated that the railroad expected to retain no benefit from the coincidental use of the facility of its employees. If the railroad relinquished control and leased the cafeteria to a third party who opened it up to the general public, the cafeteria would no longer serve the primary purposes of enabling its employees with short lunch breaks to return to work on time and improving employee morale—two *benefits* which were important in the court's ultimate decision.[6]

---

6. The *Moore* court's suggestion that employer control is an important element is also suspect

due to its heavy reliance on *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173 (1st Cir.1959) and

Control over the employee's work environment, like employer compulsion is not an essential element in the scope of employment test.

### B.

■ Defendant next contends that the court erred in failing to find as a matter of law that both the Downtown Motor Lodge and Richmond Co–Op, were not, for purposes of section 1 of the FELA, "agents" of defendant and that, consequently, the negligence of the Downtown Motor Lodge and Richmond Co–Op could not be imputed to the railroad. At trial the Court denied defendant's motion finding that the question was irrelevant in light of the broader nondelegable duty standard embraced by the Sixth Circuit in *Payne v. Balt. & Ohio R.R. Co.*, 309 F.2d 546 (6th Cir.1962), *cert. denied*, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963).[7]

Section 1 of the FELA imposes liability upon a railroad only for injury resulting from the negligence of any of its officers, agents or employees. In *Sinkler v. Missouri Pacific RR Co.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1959), the Supreme Court expanded the definition of an "agent" in section 1 to encompass all those who are "performing under contract operational activities of the employer", notwithstanding the fact that such individuals or organizations would be considered independent contractors at common law.

There, an employee of the railroad was injured when, through the fault of a switching crew employed by an outside company, the car in which the employee was riding collided with another railroad car in the station. The court held that the switching crew was engaged in operational activities of the railroad and imputed the negligence of the switching crew to the railroad.

One year later in *Ward v. Atlantic Coast Line R.R. Co.*, 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960), the Supreme Court held that a customer of the railroad was not engaged in operational activities of the railroad when an employee of the railroad was injured while helping repair the customer's side track. The employee was not working for the railroad at the time of the injury, but was working for the railroad's customer during his time off. Because the customer was not performing operational activities of the railroad, the negligence of the customer was not imputed to the railroad.

Under facts similar to those in *Ward*, the Sixth Circuit *did* impute the negligence of a third party to the railroad in *Payne*. In *Payne*, the plaintiff was killed when the boxcar upon which he was riding onto a spur track derailed and collided with the wall of an adjacent factory building. The car derailed because of a large accumulation of ashes placed on the track by SUCO, the owner of the spur track. *Payne*, 309 F.2d 548–549. Unlike *Ward*, however, the *Payne* court did not impute negligence to the railroad based on the third party's performance of "operational activities." Nor could it in light of the Supreme Court's ruling in *Ward* to the contrary. Rather, the *Payne* court imputed liability by extending the nondelegable duty standard enunciated by the Supreme Court in *Shenker v. Baltimore & Ohio R. Co.*, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963).[8] In affirming the district court's

---

*Getty v. Boston and Me. Corp.*, 505 F.2d 1226 (1st Cir.1974). In neither case was the court particularly concerned with the employer's lack of control over the employee's environment. The train itself in both *Metropolitan Coal* and *Getty* is an environment over which the railroad maintains exclusive control.

Although the *Getty* court did find that compulsion to ride the railroad as a passenger must originate from the employer and not from an outside source beyond the control of the railroad, the court's discussion of control in this context had no relationship to control of the employee's environment.

**7.** In light of this ruling, the Court's only instruction to the jury was that under the non-delegable duty standard, any negligence of the Downtown Motor Lodge or Richmond Co–Op should be imputed to the defendant.

**8.** In *Shenker* the court held that "[A] railroad has the non-delegable duty to provide its employees with a safe place to work even when they are required to go onto the premises of a

charge to the jury, the court in *Payne* equated the nondelegable duty standard with the imputation of negligence:

> Defendant owed a duty to decedent Payne. The jury was properly charged by the District Judge. If the jury found liability by virtue of defendant's independent negligence in sending the boxcar on a track having a dangerous condition present which could have been foreseen, the verdict is sound. If it found liability by virtue of imputing the negligence of SUCO to defendant, based on defendant's non-delegable duty regarding safety for its employees, the verdict is sound. Regardless of the rights between themselves, of defendant and of SUCO, defendant may not legally delegate to another its duty to its employee, and thereby escape liability to such employee.

*Id.* at 549. Thus, it appears that the nondelegable duty standard as construed in *Payne* reaches farther than the "operational activities" doctrine of *Sinkler* in its ability to impute negligence of a third party to a railroad. *Payne's* liberal interpretation of the nondelegable duty standard is not inapposite to the policy concerns underlying the Supreme Court's expansion in *Sinkler* of the class of those whose negligence may be imputed to a railroad.

Defendant does not contend that the Court has either misinterpreted *Payne* or misapplied it to the facts of this case. Defendant merely argues that *Payne* was incorrectly decided. Defendant's criticism of the decision in *Payne* certainly is not without merit. *See, e.g., Thomas v. Grigorescu,* 582 F.Supp. 514, 518 (S.D.N.Y.1984) (refusing to find that a railroad's nondelegable duty to provide its workers with a safe workplace extended to impute liability to a railroad where the third party was not railroad's agent engaged in operational activities of the railroad); *Pyzynski v. Penn. Central Trans. Co.,* 438 F.Supp. 1044 (W.D.N.Y.1977) (refusing to apply *Payne,* finding that another's negligence may not be imputed to a railroad unless the third party performs an operational activity of

third party over which the railroad has no con-

the railroad). Nevertheless, until the Supreme Court or the Sixth Circuit finds that a railroad's nondelegable duty to provide its employees with a safe place to work does not extend to situations where the third party is not engaged in the operational activities of the railroad, this Court is bound to follow the holding in *Payne*.

### C.

■ Defendant's final basis for requesting judgment n.o.v. is that the plaintiff failed to establish a *prima facie* case that defendant knew or should have known the plaintiff was unable to perform his duties as a road brakeman or that such work would aggravate any physical infirmity plaintiff might be suffering.

■ Initially, the Court again emphasizes that the standard in determining whether a directed verdict or judgment n.o.v. is proper in an FELA action is whether there is a complete absence of probative facts to support a finding of employer negligence. *Lavender v. Kurn,* 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946). The standard for determining whether an action under the FELA is a jury case was explicitly set forth in *Rogers v. Mo. Pac. R.R. Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957):

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.

*Id.* at 506–07, 77 S.Ct. at 448–49 (footnotes omitted). *See also Green v. River Termi-*

trol." *Shenker,* 374 U.S. at 7, 83 S.Ct. at 1671.

*nal Ry. Co.,* 763 F.2d 805, 806–7 (6th Cir. 1985).

Applying the principles in *Lavender* and *Rogers* to the present case, there was sufficient evidence to warrant the conclusion that the defendant negligently reassigned plaintiff to work which he was physically unfit to perform. A railroad is negligent if it assigns an employee to duties it knows or should know expose the employee to an unreasonable risk of harm. *Fletcher v. Union Pac. R.R. Co.,* 621 F.2d 902, 909 (8th Cir.1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981). A railroad has no duty to ascertain whether an employee is physically fit for his job unless it knows or should know that the job assigned exposes the employee to an unreasonable risk of harm. *Fletcher,* 621 F.2d at 909; *Isgett v. Seaboard Coastline R.R. Co.,* 332 F.Supp. 1127, 1141 (D.S.C.1971). Finally, it is beyond question that notice of an employee's physical condition to any of the employee's supervisors constitutes notice to the railroad itself. *See, e.g., Dunn v. Conemaugh & Black Lick R.R.,* 267 F.2d 571, 575 (3rd Cir.1959); *Isgett,* 332 F.Supp. at 1141.

Defendant's terminal manager Kenneth Knox's testimony that plaintiff had complained to him about his back pain was sufficient evidence to allow the jury to conclude that the railroad had notice and knew or should have known that the plaintiff was unfit to perform the strenuous tasks of a brakeman. At trial, defendant spent a considerable amount of time in attempting to solicit testimony from various witnesses that a brakeman's job is not strenuous. At most, this is a matter for the jury.

### III.

#### A.

Defendant alleges, in the alternative, that it is entitled to a new trial on the following grounds:

(1) The Court improperly directed a verdict on the issues of scope of employment and imputed negligence pertaining to both incidents, and improperly refused to instruct the jury on imputed negligence.

(2) The finding by the jury of zero percent contributory negligence with respect to the September 8 and 15, 1983 incidents was contrary to the great weight of the evidence.

(3) The Court's refusal to include separate questions concerning the September 8 and 15, 1983 incidents and the negligent reassignment claim in the interrogatories submitted to the jury prevented the jury from being able to properly evaluate the relative fault of both parties.

(4) The Court committed reversible error when it denied defendant's requested jury instructions pertaining to:

a. the jury's option to find plaintiff 100% negligent; and

b. plaintiff's claimed emotional and psychological damages; and

c. the issue of surveillance upon plaintiff.

(5) Exhibit No. 13 was totally irrelevant to the alleged incident of September 15, 1983.

The decision to grant or deny a new trial is one confided to the sound discretion of the trial court. *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); *Moran v. Johns–Manville Sales Corp.,* 691 F.2d 811, 816 (6th Cir.1982). A motion for a new trial may invoke the court's discretion when based upon a claim that the verdict is unsupported by, or is against the weight of the evidence. *See, e.g., Williams v. Union Carbide Corp.,* 790 F.2d 552, 554 (6th Cir. 1980); *Cutter v. Cincinnati Union Terminal Co.,* 361 F.2d 637, 638 (6th Cir.1966). A motion for a new trial is also appropriate when based upon a claim that the trial was not fair to the moving party, and may raise questions of law arising out of substantial error in admission or rejection of evidence or instructions to the jury. *Gen. Amer. Ins. Co. v. Central Nat'l Bank,* 136 F.2d 821, 822–23 (6th Cir.1943).

#### B.

1. *Scope of Employment/Imputed Negligence*

Defendant's claim that the Court improperly directed a verdict on the scope of em-

ployment issue does not warrant a new trial. As discussed previously, a railroad employee on layover is in the scope of employment while lodging at a facility he is encouraged to use in order to prepare for his next work assignment. Applying this legal standard, defendant offered no evidence at trial to controvert the evidence offered by plaintiff in proof of the contention that the railroad encouraged its employees to stay at the motel while on layover. The issue was, therefore, properly removed from the jury's consideration.

Similarly, the Court was compelled under *Payne* to take from the jury the question of whether the Downtown Motor Lodge or Richmond Co–Op were performing operational activities of the railroad. Under *Payne*, negligence may be imputed even where the third party, although under contract, is not performing operational activities of the railroad. Refusal to so instruct the jury otherwise was merely a consequence of the Court's earlier decision. Indeed, it would have confused the jury had they first been told to impute any negligence of the Downtown Motor Lodge and the Richmond Co–Op to defendant because a railroad has a nondelegable duty to provide its employees with a safe place to work, only to be told to impute any negligence to defendant only if the Downtown Motor Lodge or Richmond Co–Op were engaged in operational activities of defendant.

### 2. *Contributory Negligence*

The propriety of granting a new trial based upon the ground that the verdict is against the weight of evidence is governed by the following principles:

> In ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, a district judge must compare the opposing proofs and weigh the evidence (*Felton v. Spiro*, 78 F. 576 (6th Cir.1897) Taft, J.), *General American Life Ins. Co. v. Central Nat'l Bank*, 136 F.2d 821 (6th Cir. 1943), and "it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the

verdict is against the clear weight of the evidence ...."

\*　　\*　　\*　　\*　　\*　　\*

> [C]ourts are not free to reweigh the evidence and set aside the jury verdicts merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944); *Werthan Bag Corp. v. Agnew*, 202 F.2d 119, 122 (6th Cir.1953). Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached.

*Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir.1982) (quoting *TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir.1981)).

Applying these principles to the present case, the Court finds that the jury could reasonably conclude that plaintiff was not negligent. Ample evidence was offered by plaintiff whereby the jury could find that the injury to plaintiff was solely caused by the negligence of the railroad.

### 3. *Separate Interrogatories*

■ Defendant next contends that by submitting a six-question form and refusing to submit separate questions concerning the September 8 and 15, 1983 incidents, as well as the negligent reassignment claim, the jury was precluded from properly evaluating and deciding the relative fault of both parties. Defendant relies on the fact that the jury found the plaintiff zero percent negligent as proof that the interrogatories took away the jury's ability to allocate relative fault.

Whether to use a general verdict accompanied by special interrogatories is in the discretion of the trial judge. *Flanigan v. Burlington Northern Inc.*, 632 F.2d 880, 884 (8th Cir.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981). Similarly, a court may tailor the questions so as not to confuse the jury. 9 C. Wright and A. Miller, *Federal Practice and Procedure*, § 2513 at 523–525.

The Court, after attempting itself to draft a comprehensive but intelligent form, became convinced that the sixteen-question form proposed by defendant would only confuse the jury. Accordingly, the Court finds that it correctly limited the scope of the interrogatories submitted to the jury.

### 4. *Jury Instructions*

The first set of instructions, the omission of which defendant raises in support of its request for a new trial, are instruction Nos. 23–27 and 45 which taken as a whole suggest that the jury could find plaintiff 100 percent negligent or solely at fault for his injury. The Court need only review defendant's argument as it pertains to instruction No. 23 since the other instructions cited by defendant are either irrelevant or are repetitive.[9]

■ Based on the Court's instruction contained on page 51 of the jury instructions, the Court finds that the jury was properly advised that it could find the plaintiff's injury to be solely due to plaintiff's own negligence. Page 51 states:

If you should find, from a preponderance of the evidence in the case, that the defendant was guilty of negligence which caused, in whole or in part, any injury or damage to the plaintiff; and should further find, from a preponderance of the evidence in the case, that the plaintiff himself was equally guilty of some contributory negligence which contributed toward bringing about all or part of his own injury; then the total award of damages to the plaintiff must be reduced by an amount equal to the percentage of fault or contributory negligence chargeable to the plaintiff.

Such a conclusion is also possible based on the instruction on page 52, which states:

On the other hand, if you should find: (1) that the defendant was not negligent; or (2) that the defendant was negligent, but such negligence was not a cause of any injury or damage sustained by the plaintiff, then your verdict should be for the defendant.

■ Defendant next contends that the Court erred in denying requested instruction No. 38 which pertains to plaintiff's inability to recover for psychological and emotional problems not the necessary consequence of the injuries caused by defendant's negligence. This instruction was unnecessary in light of the Court's general instructions on causation and damages contained in pages 42–45 and 52–57.

■ Finally, defendant maintains that the failure to include its requested instruction indicating that the film taken by defendant of plaintiff working at home served justice and the public interest is ground for a new trial since plaintiff's counsel's cross-examination of the investigator who took the film created the inference that the investigator trespassed upon plaintiff's property. The instructions were not included because the Court was not convinced that the cross-examination of the investigator created the inferences suggested by defendant. Additionally, even if the Court erred in failing to include the instructions, their exclusion, based upon all the evidence presented at trial was not prejudicial. *See* 6A J. Moore, J. Lucas and G. Grotner, Jr., *Moore's Federal Practice,* ¶ 59.08[2] (2d ed. 1985).

### 5. *Admission of Exhibit No. 13*

■ Finally, defendant contends that Exhibit No. 13, a letter from Milwaukee Junction Terminal Manager Kenneth Knox to the Farmer's Elevator Company concerning an injury resulting from the weed condition on the premises, was irrelevant and, therefore, improperly admitted into evidence. Defendant claims that it is irrelevant because it was addressed to the Farmers' Elevator and not the Richmond Co–Op

---

**9.** Instruction No. 24 was substantially granted by the Court and is contained on page 51 of the jury instructions. Instruction Nos. 26 and 27 have no bearing on the issue of contributory negligence and are irrelevant to the defendant's argument.

No. 47 is identical to No. 23. Finally, No. 25 is almost identical to the second paragraph in No. 23. Therefore, the Court need only review its denial of instruction No. 23.

where plaintiff's alleged accident took place.

Throughout the course of the trial it became apparent through the testimony of various witnesses that there exists a great deal of confusion as to the name commonly used for describing the location where plaintiff alleged he was injured. It appears to be most commonly known as the Richmond Co–Op. It is, however, also referred to by some as the Farmers' Elevator. Accordingly, based on the contents of the letter, the Court was convinced that the document referred to the injury of plaintiff at the Richmond Co–Op. The document was, therefore, relevant to establishing the occurrence of the injury.

## CONCLUSION

For the reasons set forth above, defendant's motion for judgment n.o.v. and, alternatively, for a new trial is DENIED.

IT IS SO ORDERED.