Dennis W. BAKER, Plaintiff-Appellee,

v.

BALTIMORE & OHIO RAILROAD COMPANY, Defendant-Appellant.

No. 73-2213.

United States Court of Appeals, Sixth Circuit.

Argued April 3, 1974.

Decided Aug. 29, 1974.

James L. O'Connell, Cincinnati, Ohio, for defendant-appellant; Lindhorst & Dreidame, Cincinnati, Ohio, on briefs.

C. Donald Heile, Cincinnati, Ohio, for plaintiff-appellee; Charles J. Kelly, Cunningham, Cunningham, Heile & Kelly, Cincinnati, Ohio, on briefs.

Before CELEBREZZE, McCREE, Circuit Judges, and WALINSKI, District Judge.*

CELEBREZZE, Circuit Judge.

The Baltimore & Ohio Railroad Company appeals from a jury verdict and judgment awarding Appellee $86,500 in damages under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1972). Robert Kuntz and Dennis Baker inspected railroad cars for Appellant Baltimore & Ohio Railroad Company. On December 20, 1970, at approximately 3:00 a. m., they were on a lunch break inside the inspectors' shanty. Kuntz brought a target pistol into the shanty and showed it to another employee. He then placed the pistol in the pocket or folds of his coat, which was resting on top a candy machine. A supervisor summoned Kuntz and Appellee to inspect a car which had just arrived. While Kuntz was in the process of removing his coat from the candy machine, the pistol fell to the floor and discharged, causing permanent damage to Appellee's thigh.

The railroad had no regulations concerning the carrying of pistols by its car inspectors. No railroad foreman or supervisor knew of the presence of Kuntz' pistol on Appellant's premises until after the mishap occurred.

Appellant raises two basic objections to the proceedings below. First, it

* The Honorable Nicholas J. Walinski, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

argues that it was entitled to a directed verdict or at least to more favorable jury instructions as to liability. Second, it asserts that the District Court erred in instructing the jury on damages, on the grounds that lost future wages should not have been allowed and that future damages should not have been permitted because of the absence of evidence of a proper interest rate.

Appellant's basic contention is that it is not liable, as a matter of law, for Appellee's injury. This argument is based on two related assertions—that employee Kuntz was not acting in the course and scope of his employment at the time the accident occurred and that Kuntz' negligence resulted solely from the presence of the pistol on the premises rather than from any act in the course of Kuntz' employment.

Appellant's liability in this matter is a question of federal law, to be determined by reference to the policies that undergird the FELA. Central Vermont Ry. v. White, 238 U.S. 507, 511–512, 35 S.Ct. 865, 59 L.Ed. 1433 (1915). The enactment of the FELA represented "an avowed departure from the rules of the common law." Sinkler v. Missouri Pacific R.R., 356 U.S. 326, 329, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958). Rather than adopting the common law view that the torts of fellow servants are distinct from those of the employer, Congress enacted a national standard designed to promote

> the welfare of both employer and employee, by adjusting the losses and injuries inseparable from industry and commerce to the strength of those who in the nature of the case ought to share the burden.[1]

As the Supreme Court stated in *Sinkler*, 356 U.S. at 330, 78 S.Ct. at 762:

> [A] railroad worker may recover from his employer for an injury caused in whole or in part by a fellow worker, not because the employer is himself to blame, but because justice

demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered. If this standard is not met and injury results, the worker is compensated in damages.

FELA's liberal purpose must be kept in mind when confronting arguments that would restrict an employer's liability under the Act.

Appellant argues that it is not liable for the negligence of its employee Kuntz unless Kuntz' negligence occurred while he was "in the course and scope of his employment," and Appellant construes that term to require that Kuntz' negligence must have occurred while he was acting "in furtherance of defendant's business." It argues that Kuntz was not so acting when he was removing his coat from the candy machine. On this ground Appellant claims that the District Court should have directed a verdict in its favor or should have granted a jury instruction to the desired effect.

We disagree. Under the FELA a defendant's liability for the negligence of its servants is not restricted by the common law doctrine of *respondeat superior*. Rather, the FELA has made the railroad liable to injured employees "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees" of the railroad. 45 U.S.C. § 51 (1972). It is unnecessary to show that such persons were negligent while performing a particular act "in furtherance of their master's business," as this common law term has been interpreted. *See, e. g.*, Jackson v. Chicago, R. I. & P. Ry., 178 F. 432 (8th Cir. 1910). Under the Supreme Court's reasoning in *Sinkler*, the restrictive view of railroad liability that Appellant demands is untenable.[2]

---

1. S.Rep.No.460, 60th Cong., 1st Sess. 3 (1908).

2. We note that this case does not involve an employee's "sportive" act. In Copeland v.

Thus, it was proper for the District Court to refuse an instruction stating the restrictive "in the furtherance of the master's business" test. Instead, the District Court instructed the jury that the railroad was liable for all negligent acts of its employees "committed by such employees while in the performance of their duties and within the scope of their employment." Later in his charge the District Judge stated:

"Now, your specific question is this: At or before the time this incident occurred had [Kuntz] returned to the control of his master, his foreman, or had he returned to the business of the Baltimore & Ohio Railroad at or before [*sic*] this occurred?

"If you find by a preponderance that he had, then he was engaged in the course of his employment at the time of the incident."

■■ We believe that this instruction was too favorable to Appellant, because it adopts a restrictive "in the course of employment" test by suggesting that Kuntz was not in the course of his employment while on his lunch break. Appellee, however, has not challenged the validity of the Court's instructions. Assuming that a "course of employment" test would apply,[3] the better view is that "[t]he scope of employment includes not only actual service, but also those things necessarily incident thereto," Virginian Ry. v. Early, 130 F.2d 548, 550 (4th Cir. 1942), such as coming to and leaving work while on the employer's premises. Erie R.R. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057 (1917); North Carolina R.R. v. Zachary, 232 U.S. 248, 260, 34 S.Ct. 305, 309, 58 L.Ed. 591 (1914) (visit to house was not "at all out of the ordinary" and was not "inconsistent with his duty to his employer"), and resting while on duty, Mostyn v. Delaware, L. & W. R.R., 160 F.2d 15 (2d Cir. 1947).[4] Thus, it may be said that Kuntz was in the course of his employment during the lunch break as well as while removing his coat from the candy machine. Indeed, on very similar facts in a Federal Tort Claims Act case, where the "course of employment" test does apply, we concluded that a negligent servant was in the scope of her employment when a pis-

St. Louis—S. F. Ry., 291 F.2d 119 (10th Cir. 1961), for instance, the Tenth Circuit held that a railroad was not liable for injuries to an employee resulting from a practical joke of his fellow worker. Over the sharp dissent of Chief Judge Murrah, the majority held that "the acts of the fellow employee which caused plaintiff's injury were wholly outside the scope of his employment, intended only to further his own interests, and not those of his employer, and were not chargeable to his employer." 291 F.2d at 122.

It might be suggested that the basis for the *Copeland* decision and others like it (*see* Hoyt v. Thompson, 174 F.2d 284 (7th Cir. 1949); Lavender v. Illinois Central R. R., 358 Mo. 1160, 219 S.W.2d 353, cert. denied, 338 U.S. 822, 70 S.Ct. 67, 94 L.Ed. 499 (1949); Annotation, 33 A.L.R.2d 1295, 1309 (1954)) is that the acts complained of were not negligence at all, but were intentional actions of employees, for which FELA does not hold employers liable. *See* Davis v. Green, 260 U.S. 349, 43 S.Ct. 123, 67 L.Ed. 299 (1922). We have no occasion to consider the scope or validity of these decisions, in view of the facts of this case.

3. While the issue has not been presented by this case, we are not persuaded that the term "employee" in the statute is to be defined as "one acting in the course and scope of his employment." The use of this restrictive definition seems to apply a common law rule to a statute designed specifically to abrogate the common law. *Sinkler*, 356 U.S. at 329–330, 78 S.Ct. 758. Recognizing that some definition of the term "employee" must be adopted, we think it more in keeping with the purposes of the Act to apply a liberal rule. This rule might extend liability to the railroad for all negligent acts by employees which occur during the hours of the employee's working day on the employer's premises. That question, however, is not before us, as Appellee did not object to the "course and scope of employment" test.

4. The cases cited above deal with the question whether an injured employee was acting within the course of his employment at the time he was injured. It occurs to us that, under the statute, a more liberal rule would apply in determining whether the acts of a negligent employee were within the scope of the statutes.

tol discharged, injuring a hospital patient. Russell v. United States, 465 F.2d 1261 (6th Cir. 1972).

 It is clear from the jury's conclusion that the correct result was not affected by the instructions, since the jury found Appellant liable for Kuntz' negligence in removing his coat from the machine. Thus, since despite our reservations about the District Court's instructions the jurors reached the proper conclusion, we find no reversible error. Tyree v. New York Central R.R., 382 F.2d 524, 527 (6th Cir. 1967); Spaeth v. United States, 232 F.2d 776, 777 (6th Cir. 1956). The possible fault in the jury charge was in Appellant's favor, and it cannot claim a new trial by virtue of such benefit.

A second branch of Appellant's argument that it should have received a directed verdict or more favorable jury instructions as to liability is that Appellee's injury was caused primarily by Kuntz' bringing a pistol into the inspector's shanty, which in itself may not have been an act of negligence.

 In this case, however, the act complained of was Kuntz' removing his coat from the candy machine while forgetting about the pistol, in preparation for inspecting a railroad car. The test for whether this act amounts to negligence under the FELA is whether the act "played any part, even the slightest, in producing [Appellee's] injury." Rogers v. Missouri Pacific R.R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, reh. denied, 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed.2d 764 (1957); Tyree v. New York Central R.R., 382 F.2d 524 (6th Cir. 1967). We have held that it is reversible error for a District Court to fail to instruct the jury that employer negligence "in whole or in part" suffices to establish employer liability, thus emphasizing that in FELA cases "Congress has deliberately established a more protective principle for railroad employees than that of the common law." Hausrath v. New York Central R.R., 401 F.2d 634, 638 (6th Cir. 1968). *See also* Rodriguez v. Delray Connecting R.R., 473

F.2d 819, 820 (6th Cir. 1973). This principle holds true where the employer is sued because of the negligence of its employees, as well as where the employer is sued because of the employer's failure to provide a safe place of work. *See* 45 U.S.C. § 51 (1972). Appellant is liable if Kuntz' negligence in removing his coat from the candy machine while forgetting about the pistol played "a part" in causing Appellee's injury. *Tyree,* 382 F.2d at 529; *Hausrath,* 401 F.2d at 637.

 In determining whether Appellant's motion for a directed verdict should have been granted, we must construe the evidence in the light most favorable to Appellee, drawing inferences on his behalf that the evidence supports. Rodriguez v. Delray Connecting R.R., 473 F.2d 819, 820 (6th Cir. 1973); Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). Under this standard, we conclude that the evidence supports a finding that Kuntz' negligence in removing his coat from the machine while forgetting that the pistol was placed on top of it, played "a part" in causing Appellee's injury. Without such negligence, the pistol would not have discharged. Thus, the motion for a directed verdict was properly overruled.

· Two final objections pressed on this appeal concern the proper measure of damages. The first objection is that the District Court should have instructed the jury not to award any damages representing lost future wages, in view of higher educational opportunities open to Appellee, which would presumably allow him to secure a higher paying position than that of a railroad car inspector.

The evidence stipulated on appeal, pursuant to Fed.R.App.P. 10(b), establishes that since his injury Appellee could not do the work of a railroad car inspector or carman, that Appellee has taken sedentary employment at a lower salary than his previous position, and that Appellee was qualified and financially able "to pursue further education which would enable him to perform in

**644**

any line of work, with the exception of the professional level." The District Court submitted the following charge to the jury:

"[T]he law does require that any person who sustains a personal injury must mitigate his damage to the extent reasonably possible. Therefore, with respect to any claim of the plaintiff concerning a reduction in earning power, future lost wages or any inability to earn as much in the future as he would have been able to earn but for the injury sustained in December of '70, the plaintiff was required to mitigate his damage, and such mitigation may include further scholastic training, vocational or rehabilitation training or any other preparation reasonably necessary to improve the plaintiff's earning ability in the light of his injury."

In considering whether the District Court should have refused to let the jury assess future wages lost because of Appellee's injury, we start from the proposition that Appellee was entitled to recover for any loss of earning power suffered because of Appellant's negligence. In assessing damages proximately caused by Appellant's negligence, the jury was to consider whether Appellee exercised reasonable efforts to secure gainful employment. If Appellee failed to do so, the loss of wages is said to be Appellee's choice rather than a proximate result of Appellant's negligence. Hill v. Franklin County Board of Education, 390 F.2d 583, 585 (6th Cir. 1968).

Appellant seems to assert that Appellee's failure to enroll in college constitutes a failure to exert reasonable efforts to secure gainful employment. The decision to pursue higher education, however, cannot be so construed as a matter of law. Such a decision involves a commitment to new career paths, years of diligent intellectual effort, and

potential hardships of various kinds. Furthermore, there is no assurance that Appellee would actually have increased his earning power after spending the necessary funds to attend college.

We decline to adopt a rule that manual laborers who are injured and prevented from returning to their chosen line of work are foreclosed from recovering for their lost earning capacity because they choose not to pursue a new career path of speculative financial reward. The jury was entitled to consider "the extent of Plaintiff's injuries, his education, station in life, and character" in assessing Appellee's lost earning power in such amount as it deemed reasonable. Affolder v. New York, C. & St. L. R.R., 79 F.Supp. 365 (E.D.Mo.1948), aff'd, 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1950). Whether Appellee's failure to pursue higher educational opportunities amounted to a lack of reasonable effort to pursue gainful employment was one of many factors the jury was instructed to consider. Reasonable minds can differ on this question, so that the jury was properly allowed to decide it. Ginsburg v. Ins. Co. of North America, 427 F.2d 1318, 1320 (6th Cir. 1970); Doane Agricultural Service v. Coleman, 254 F.2d 40, 42 (6th Cir. 1958); Lovas v. General Motors Corp., 212 F.2d 805, 807 (6th Cir. 1954).

The second objection to the District Court's instructions on damages is its failure to remove the question of future damages from the jury because of the absence of proof of the highest rate of interest at which an award for future damages could be discounted. We squarely rejected Appellant's argument in Baynum v. Chesapeake & Ohio Ry., 456 F.2d 658, 661 (6th Cir. 1972), and we adhere to that decision.

The decision of the District Court is affirmed.