Bernard MORANT, Plaintiff–Appellant,

v.

LONG ISLAND RAILROAD, Defendant–Appellee.

No. 1689, Docket 94–9277.

United States Court of Appeals, Second Circuit.

Argued June 26, 1995.

Decided Sept. 21, 1995.

Mark G. Sokoloff, New York City (Jaime Mercado, New York City, Jacob D. Fuchsberg Law Firm, New York City, of counsel), for Plaintiff–Appellant.

Franklin W. Kronenberg, Jamaica, NY (Roberta Bender, Jamaica, NY, of counsel), for Defendant–Appellee.

Before: VAN GRAAFEILAND, JACOBS and LEVAL, Circuit Judges.

JACOBS, Circuit Judge:

Plaintiff-appellant Bernard Morant suffered an on-the-job injury while cleaning the inside of a railroad car parked at a railyard siding. Morant claimed that he fell when a crew moving cars on the same track jarred the car in which Morant was working. He brought suit against his employer, defendant-appellee the Long Island Railroad ("LIRR") under the Federal Employers' Liability Act

("FELA"), alleging that the railroad was negligent (*inter alia*) in failing to employ a warning system—the "blue signal"—that would have warned the crew not to move the car Morant was in. Morant appeals from a final judgment entered by United States Magistrate Judge Steven Gold (E.D.N.Y.) dismissing Morant's complaint after a jury verdict in favor of the LIRR.[1] On appeal, Morant argues that the magistrate judge committed reversible error by failing to instruct the jury that the LIRR had committed negligence per se when it violated federal regulations concerning use of the blue signal. We affirm because we conclude that the blue signal regulations do not cover the work that plaintiff was doing when he was injured.

## BACKGROUND

At the time of the incident, the LIRR employed Morant as a Car Appearance Maintainer ("CAM") in the railroad's West Side Manhattan yard near Pennsylvania Station. CAMs are charged with cleaning the passenger cars, including sweeping and mopping of the interior.

On September 4, 1989, Morant and his work partner Deborah Payne were scheduled to work the 4:30 p.m. to 11:30 p.m. shift. As Morant and Payne walked to the train they were assigned to clean, they noticed that there was a gap of between one and twelve feet between one pair of cars. After entering the end car, Morant and Payne began to clean the interior. According to Payne's testimony at trial, some 10 to 20 minutes later they "heard a big boom." At that point Morant

> was on the east end and I was on the west end of the train, and when the boom went, I fell into the seat. In the meantime, Bernie was up against where the door was, and all I saw when I went down, he went back up against the door, and he fell into his seat.

Appendix ("A.") at 44. At trial, Morant argued that his injury was caused by the movement of cars on Track 26, as they were being

pushed together in order to close the gap that he and Payne had noticed.

Repeatedly over the three-day trial, Morant's counsel referred to the federal regulations that require railroads to post blue signals warning of the presence of railroad workers on, under or between railroad equipment. The blue signal—usually a blue flag in daylight or a blue light at night—protects employees who might be vulnerable to the movement of the cars by warning other crews not to move trains around a work area. The federal regulations in place at the time of Morant's accident provided:

218.23  Blue signal display.

(a) Blue Signals displayed in accordance with §§ 218.25, 218.27, or 218.29 signify that workmen are *on, under, or between rolling equipment.* When so displayed—

(1) The equipment may not be coupled to;

(2) The equipment may not be moved, except as provided for in § 218.29;

(3) Other rolling equipment may not be placed on the same track so as to reduce or block the view of a blue signal, except as provided for in § 218.29(a), (b), and (c); and

(4) Rolling equipment may not pass a displayed blue signal.

(b) Blue Signals must be displayed in accordance with §§ 218.25, 218.27, or 218.29 by each craft or group of workmen prior to their going on, under, or between rolling equipment and may only be removed by the same craft or group that displayed them.

49 C.F.R. § 218.23 (1989) (emphasis added). The regulations define "workmen" as

railroad employees assigned to *inspect, test, repair, or service* railroad rolling equipment, or their components including brake systems. Train and yard crews are excluded except when assigned to perform such work on railroad rolling equipment that is not part of the train or yard movement they have been called to operate.

stipulation signed by the parties.

---

1. The case was tried before the magistrate judge with direct appeal to this court pursuant to a

Note: *"Servicing" does not include supplying cabooses, locomotives, or passenger cars with items such as ice, drinking water, tools, sanitary supplies, stationery,* or flagging equipment.

49 C.F.R. § 218.5 (1988) (emphasis added). The regulations are further amplified as follows:

This subpart prescribes *minimum requirements* for the protection of railroad employees engaged in the *inspection, testing, repair, and servicing* of rolling equipment whose activities require them to work *on, under, or between* such equipment *and subjects them to the danger of personal injury posed by any movement of such equipment.*

49 C.F.R. § 218.21 (1989) (emphasis added).

Morant presented unrebutted testimony that the LIRR does not apply the blue signal regulations to CAMs, A. at 80, and that CAMs were not permitted to put up blue signals. A. at 101. During the charge conference, Morant's counsel argued that the blue signal rules, properly construed, apply to CAMs, and that the court should instruct the jury that the LIRR's failure to post blue signals for CAMs constituted negligence per se. In the alternative, Morant's counsel asked that the regulations themselves be received in evidence without any jury instructions, and that he be allowed to reference the regulations in summation. A. at 260–63. The court rejected these requests, finding that the LIRR's conduct did not violate the blue signal regulations because they do not apply to CAMs. The magistrate judge forbade counsel from making any reference to the regulations in closing arguments:

My ruling is that the regulation does not apply. I make the ruling for several reasons.

First of all, it seems to me from the natural language of the underlying regulation, which refers to workers who in effect test, repair or service, that by its very terms, the regulation does not cover cleaning. Used in this context, the word "service," which is the only one that could even arguably cover cleaning, seems to me to be service in the sense of repair, like an auto-

mobile service station, and not in the most generic sense to cover cleaning.

In addition, we have had testimony that indicates it has long been the practice of the Long Island Rail Road, a heavily regulated entity, not to apply this regulation to people who clean cars, such as the plaintiff, and I see no amendment to the rules or no violation of the citation by the promulgating authorities, which would indicate that the promulgating authority interprets the rules to cover individuals like plaintiff, who the Long Island Rail Road has openly and notoriously for some period of time held it does not cover.

A. at 319–20. In considering the applicability of these regulations to CAMs, the magistrate judge also considered the following clarification contained in a memorandum issued by the Federal Railroad Administration Office of Safety in December 1991—more than two years after Morant's injury:

Certain servicing activities can be carried out without exposure to injury. Examples of such activities would be bleeding of the airbrake system on cars, oiling journal boxes on cars, *interior passenger coach cleaning not requiring use of ladders,* washing the exterior of passenger equipment either mechanically or manually.... Similarly, certain supplying activities such as supplying locomotives and cabooses with ice, water, fuses, stationery and paper toweling can be carried out without exposure to injury. These and like activities when effectively confined to the specific non-hazardous work function and when not combined with work which poses an obvious hazard, would not require blue signal protection.

A. at 426 (emphasis added).

After summation and charge, the jury was given a set of interrogatories, the first of which read:

In regard to the incident which Mr. Morant claims took place on September 4, 1989, has the plaintiff, Mr. Morant, established by a preponderance of the evidence that the defendant Long Island Rail Road was negligent?

A. at 413. After a day of deliberation the jury answered "no" to this interrogatory.

The magistrate judge then dismissed the complaint. This appeal followed.

## DISCUSSION

■ In argument before the magistrate judge during the charge conference, Morant sought the benefit of the blue signal regulations in one of two alternative ways: a per se negligence charge, or the opportunity by counsel to argue the import of the regulations after the jury was supplied with a copy of them.[2]

■ We can dispose first of plaintiff's second choice, which was a double-barreled application: to give the regulations to the jury *and* to allow closing arguments concerning them. Extensive testimony on blue signal practice had already been adduced. In that circumstance, it cannot be said that the court abused its discretion in refusing to receive in evidence or hand to the jury a legal text that is confusing and choked with cross-references. Morant asserts that the blue signal was an essential part of his claim and that the court's ruling foreclosed his counsel from presenting that critical argument to the jury on summation. However, the court's ruling did not in terms bar Morant's counsel from referencing the blue signal practice in summation, or from reminding the jury that the LIRR failed to use that precaution to protect Morant. In fact, Morant's counsel made those arguments and, in so doing, referenced the extensive testimony introduced during trial concerning blue signal regulations and practices. *See* A. at 332. In short, even if the court's ruling was erroneous, it had no prejudicial impact. *See United States v. Carson,* 52 F.3d 1173, 1188 (2d Cir.1995) ("litigants are entitled to a fair as opposed to a perfect trial" (citations and internal quotations omitted)).

Thus, the sole remaining issue we must decide on this appeal is whether the magistrate judge erred in refusing to charge the jury that the LIRR was per se negligent in failing to apply the blue signal regulations to CAMs.

**2.** Morant's brief argues that the magistrate judge erred in failing to give the jury the New York State standard charge on per se negligence. This case is incontestably governed by federal

■ Morant's lawsuit arose under FELA, which provides in pertinent part:

> Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

45 U.S.C. § 51. Courts have "liberally construed" FELA to allow recovery. *Consolidated Rail Corp. v. Gottshall,* — U.S. —, —, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994). Nevertheless that "does not mean that it is a workers compensation statute." *Id.*

■ It has long been established that FELA is governed "by the common law principles as established and applied in the federal courts." *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1026–27, 93 L.Ed. 1282 (1949) (citation omitted). Thus, a FELA claim is

> governed in its entirety by acts of Congress or by federal decisional law—in other words, by the provisions of the federal statutes so far as applicable, fitted into the common law background with respect to concepts of negligence, contributory negligence, last clear chance, assumption of risk, proximate cause, etc., as the federal common law doctrines in such particulars are determined and declared by decisions of the federal courts.

*Jacobson v. New York, N.H. & H.R. Co.,* 206 F.2d 153, 155 (1st Cir.1953).

■ Among the doctrines borrowed from the "common law background" is the doctrine of negligence per se. *See, e.g., Resolution Trust Corp. v. Heiserman,* 839 F.Supp. 1457, 1466 (D.Colo.1993) ("negligence per se is a cognizable claim under federal common

rather than state substantive law, *see infra.* Therefore, if there were an error, this would not be it.

law"). "It is well-settled that the FELA requires a finding of negligence per se when there has been a violation of a safety statute specifically aimed at the railroad industry." *Ries v. National Railroad Passenger Corp.*, 960 F.2d 1156, 1159 (3d Cir.1992). Under FELA, conduct is deemed negligent per se if it violates a statute or regulation and if it "contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." *Kernan v. American Dredging Co.*, 355 U.S. 426, 433, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958). The blue signal regulations were promulgated pursuant to 45 U.S.C. § 431 (repealed July 5, 1994) and were designed specifically to protect railroad workers. The LIRR's violation of these regulations, therefore, would have been potentially negligence per se.

■ At trial and on appeal, plaintiff argued that the blue signal regulations apply on a job-title by job-title basis, and that all CAMs are always subject to blue signal protection whenever they are "on, under or between" the cars, or in them. The railroad argues that the regulations never apply to CAMs. The magistrate judge, presented with the issue in those terms, analyzed it in those terms and held in favor of the railroad. We are not convinced, however, that the text of the regulations requires that they apply either across-the-board to all CAMs doing all tasks all the time, or not at all.[3]

The blue signal regulations protect railroad workers when they engage in tasks that "require them to work on, under, or between [the railroad cars] *and subject[ ] them to the danger of personal injury posed by any movement of such equipment.*" 49 C.F.R. § 218.21 (1989) (emphasis added). Assuming as we do that CAMs who are in the cars to clean them are "on" them for this purpose, the eligibility test in the language of the regulations seems to turn less on job-title than on whether a worker is engaged in an activity that would be hazardous if the equipment were to move. Under this reading of the regulations, Morant was not entitled to

blue flag protection. Morant argues that, because some of the work done by CAMs (such as cleaning the outside of the windshield) is done on a ladder, and is therefore dangerous, all of their work must be protected by the regulations. At the time of his alleged accident, however, Morant was sweeping and cleaning a passenger car. This work is comparable to "supplying ... passenger cars with items such as ice, drinking water, tools," and other supplies, activities expressly excluded by an explanatory note to § 218.5. Although Morant used a ladder for some assignments, he was not engaged in such a task when he was injured. Therefore, based on the language of the regulations alone—and the parties have given us little else—the railroad was not per se negligent in refusing to give blue signal protection to Morant when he was injured.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

---

3. In addition, the magistrate judge's rationale for his conclusion was flawed. In large part, the magistrate judge based his exclusion of the regulations on the December 1991 memorandum. This was error. The accident occurred in 1989, two years before the memorandum was issued.